1  LOCKRIDGE GRINDAL NAUEN P.L.L.P.
2  REBECCA A. PETERSON (241858)
3  100 Washington Avenue South, Suite 2200
   Minneapolis, MN 55401
4  Telephone: (612) 339-6900
   Facsimile: (612) 339-0981
5  rapeterson@locklaw.com
6
7  Jon W. Borderud, Esq. (St. Bar # 134355)
   Law Office of Jon Borderud
8  7 West Figueroa Street, 3rd Floor
   Santa Barbara, CA 93101
9  310-621-7004
10 borderudlaw@cox.net
11
   [Additional Counsel on Signature Page]
12 Attorneys for Plaintiffs
13
                    UNITED STATES DISTRICT COURT
14                  CENTRAL DISTRICT OF CALIFORNIA
15                        WESTERN DIVISION

16 **JANET JUANICH**                  )  Case No.  2:20-cv-3443
   individually and on behalf of a    )
17 class of similarly situated        )
18 individuals,                       )  **CLASS ACTION COMPLAINT FOR:**
                                       )
19              **PLAINTIFFS**,        )  (1) **California's Consumer Legal**
                                       )      **Remedies Act, California Civil Code**
20                                     )      **§§1750;**
   V.                                  )  (2) **California False Advertising Law,**
21                                     )      **California Business & Professions Code**
22 **EVENFLO COMPANY,**               )      **§§17500;**
   **INC., GOODBABY**                 )  (3) **Unfair Competition Law, California**
23 **INTERNATIONAL**                  )      **Business & Professions Code §§17200;**
   **HOLDINGS LIMITED**,             )  (4) **Unjust Enrichment;**
24                                     )  (5) **Fraudulent Misrepresentation; and**
25              **DEFENDANTS**.       )  (6) **Fraudulent Concealment**
                                       )
26                                     )
                                       )
27                                     )  **DEMAND FOR JURY TRIAL**
28                                     )

## INTRODUCTION

1.      Plaintiff Janet Juanich ("Plaintiff"), individually and on behalf of all others similarly situated, by and through her undersigned attorneys, brings this Class Action Complaint and jury demand against Defendants Evenflo Company, Inc. and Goodbaby International Holdings Limited ("Defendants"), for their reckless and/or intentional practices of using misleading and deceptive marketing claims and making material statements and misrepresentations concerning the safety of their Big Kid Belt-Positioning Booster seats ("Big Kid Booster").

2.      Defendants intentionally designed their marketing with claims that targeted and appealed to consumers, who were concerned with providing their children or grandchildren with a safe and reliable belt-positioning booster seat.

3.      However, Defendants' labels and packaging claims were misleading to consumers due to the reckless and/or intentional use of statements and representations regarding the Big Kid Booster's safety that were unsupported by their own safety tests and marketed for use with children contrary to the recommendations by the American Academy of Pediatrics ("AAP") and National Highway Traffic Safety Administration ("NHTSA").

## JURISDICTION AND VENUE

4.      This Court has subject matter jurisdiction over all causes of action under the Class Action Fairness Act of 2005 and 28 U.S.C. §1332, pursuant to which this Court has diversity jurisdiction because Plaintiff and the Class members are

- 1 -

citizens of a states different than Defendants and because the amount in controversy exceeds the sum or value of $5,000,000.

5.    Venue is proper in this District pursuant to 28 U.S.C. §1391 because Plaintiff resides and suffered injury as a result of Defendants' acts in this District, a substantial part of the acts or transactions giving rise to the claims occurred in this District, Defendants conduct substantial business in this District, Defendants have intentionally availed themselves of the laws and markets of this District, and Defendants are subject to personal jurisdiction in this District.

## PARTIES

6.    Plaintiff is, and at all times relevant hereto has been, a citizen and resident of the state of California.  In April 2019, Plaintiff purchased the Evenflo Big Kid Sport High Back Booster Car Seat from Walmart in Santa Maria, California, to use with her 6-year-old grandchild.

7.    Prior to purchasing Defendants' product, Plaintiff, like other reasonable consumers, saw and reasonably relied upon Defendants' false, misleading, and deceptive labels, packaging, statements, and representations alleged herein, when making her decision to purchase Defendants' product.

8.    Plaintiff was unaware of the Defendants' misleading and deceptive statements and representations regarding the safety of the Big Kid Boosters.  When Plaintiff learned that Defendants' statements and representations were misleading, deceptive, and untrue, she stopped using the Big Kid Booster.

9.     If Plaintiff were to encounter Defendants' products in the future, she could not rely on the truthfulness of the packaging and labeling unless Defendants corrected their misleading packaging and labeling claims.

10.     Defendant Evenflo Company, Inc. ("Defendant Evenflo") is headquartered in Ohio, with manufacturing capabilities and facilities also in Ohio. Defendant Evenflo conducts business in the state of California by selling and advertising the Big Kid Booster here.

11.     Defendant Goodbaby International Holdings Limited ("Defendant Goodbaby") is incorporated in the Cayman Islands with headquarters in Shanghai, China.  Defendant Goodbaby wholly owns, operates, and/or controls Defendant Evenflo.

12.     Defendants develop, design, manufacture, label, distribute, market, advertise, and sell baby products such as car seats, strollers, safety gates, high chairs, and playards.

13.     The Big Kid Booster's labeling and packaging were prepared, reviewed, and/or approved by Defendants and their agents, and was disseminated by Defendants and their agents through the labeling, packaging, and marketing of the Big Kid Booster that contained the misrepresentations alleged herein.

14.     Defendants knew that consumers such as Plaintiff and the Class members would be the end purchasers of the Big Kid Booster, and the target of their advertising and statements.

15.   Defendants intended for the end purchasers, such as Plaintiff and the Class members, to rely on the statements and representations on the labels, packaging, and other marketing materials when deciding to purchase the Big Kid Booster.

16.   Defendants directly marketed to Plaintiff and the Class members through statements on their website, labels, advertising, and packaging.

17.   As a result of Defendants' misleading and deceptive statements and representations, reasonable consumers, including Plaintiff and the Class members, were misled into purchasing the Big Kid Boosters.

18.   Defendants own, manufacture, and distribute the Big Kid Boosters and created, allowed, oversaw, and/or authorized the unlawful, fraudulent, unfair, misleading, and/or deceptive labels, packaging, statements, and representations of the Big Kid Booster.

19.   Defendants were responsible for conducting safety tests of their Big Kid Boosters.  Consequently, Defendants knew there were material and misleading statements and representations concerning the true nature of the safety standards to which the Big Kid Boosters were subjected, and to which the labeling, packaging, advertising, and marketing claims did not conform.

**FACTUAL ALLEGATIONS**

20.   The American Academy of Pediatrics currently recommends that children remain in rear-facing car seats for as long as possible before moving to a

- 4 -

harnessed forward-facing car seat, in which they should also remain for as long as possible.  Only when a child outgrows the forward-facing car seat by reaching the height and/or weight limit should they be moved to a belt-positioning booster seat.[1]

21.    However, even in the early 2000s, the AAP advised that children under 40 pounds were safest riding in a car seat with its own internal harness.

22.    The majority of harnessed forward-facing car seats are intended for children up to 65 pounds.  The lowest maximum weight of a forward-facing seat currently available is 40 pounds.[2]

23.    The National Highway Traffic Safety Administration echoes the AAP's car seat recommendations: children should remain rear-facing for as long as possible before transitioning to a forward-facing seat, where they should also remain for as long as possible (e.g., until they reach the maximum height and/or weight for the seat).[3]

---

[1] "AAP Updates Recommendations on Car Seats for Children" (August 30, 2018). Available at https://www.aap.org/en-us/about-the-aap/aap-press-room/Pages/AAP-Updates-Recommendations-on-Car-Seats-for-Children.aspx (last accessed April 5, 2020).

[2] Dennis Durbin and Benjamin Hoffman, "Child Passenger Safety," in Pediatrics, November 2018, Available at https://pediatrics.aappublications.org/content/pediatrics/142/5/e20182460.full.pdf (last accessed April 5, 2020).

[3] NHTSA's " Car Seat Recommendations for Children," https://www.nhtsa.gov/sites/nhtsa.dot.gov/files/nhtsacarseatrecommendations.pdf (last accessed April 5, 2020).

24.    On February 6, 2020, ProPublica, an independent, nonprofit investigative newsroom, published the results of its investigation in to claims that Defendants have made regarding the safety of their Big Kid Booster.  It examined video of Defendants' internal side-impact crash tests and examined internal documents and deposition testimony that revealed that Defendants' marketing, claims, and representations did not accurately reflect the true safety of the Big Kid Booster.[4]

25.    When Defendants launched the Big Kid Booster in the early 2000s, it was marketed as safe for infants as young as 1-year-old and 30 pounds, with no minimum height requirement.  In order to compete with Graco's booster seat, the Big Kid Booster was marketed for children younger and smaller than Graco's seat, and at a lower price point.  Consequently, even then, the Big Kid Booster's marketing contradicted the AAP's recommendations.

26.    In comparison, at the same time, Graco marketed its booster seat for children who were at least 3 years old, 30 pounds, and 38 inches tall.

27.    In 2007, several years after the launch of the Big Kid Booster, Defendants increased the minimum age to 3-years-old and added a minimum height

---

[4] Daniela Porat and Patricia Callahan, "Evenflo, Maker of the 'Big Kid' Booster Seat, Put Profits Over Child Safety," February 6, 2020, https://www.propublica.org/article/evenflo-maker-of-the-big-kid-booster-seat-put-profits-over-child-safety (last accessed April 5, 2020).

of 38 inches.  They also changed their marketing materials to reflect the increased age and added height minimum.

28.    While Defendants warned that using the Big Kid Booster contrary to their then-updated minimums could result in serious injury or death, they failed to notify consumers who had previously purchased the product about the update.

29.    In order to better compete with Graco, Defendants added side wings to the Big Kid Boosters: compare the seat below on the left, with no side wings, with the seat on the right, with side wings.

 

30.    The side wings resulted in perceived increased safety of the Big Kid Booster.  However, Defendants' test records show that the side wings did not improve the seat's side-impact performance, as also evidenced by the side-by-side comparison below (the seat on the right has side wings and the seat on the left does not):



31.    In 2011, the AAP and the NHTSA issued updated recommendations that children should only be transitioned from a harnessed forward-facing car seat to a belt-positioning booster once the harnessed car seat is outgrown by height or weight; they no longer recommended transitioning when the child reached 40 pounds.

32.    Despite the updated recommendations by both the AAP and the NHTSA, Defendants refused to update their labeling, packaging, or marketing materials and continued to claim their Big Kid Boosters were safe for children as young as 3 years old and as small as 30 pounds.

33.    The NHTSA requires that child safety seats pass simulated front-impact collision tests.  However, there is no such national standard for side-impact testing of child safety seats.  Consequently, car seat manufacturers such as Defendants are able to develop their own self-serving standards and determine on their own whether they pass or meet those standards.

34.    Defendants claim that their side-impact test protocol simulates the energy present in severe 5-star government side-impact tests of automobiles, and that their products meet or exceed their own self-serving side-impact standards.

### Safety Testing

At Evenflo, we continue to go above and beyond government standards to provide car seats that are tested at 2X the Federal Crash Test Standard.

- Side Impact Tested: Meets or exceeds all applicable federal safety standards and Evenflo's side impact standards.

35.    On Defendants' labeling, packaging, and marketing, Defendants touted the safety of the Big Kid Booster in side-impact crash tests.

### Evenflo Side Impact Testing

Evenflo Side impact testing simulates a crash in which the vehicle carrying the car seat is struck on the side by another vehicle. An example of a real life side impact collision is when a car crossing an intersection is struck on the side by another car that ran a stop sign.









36.    In order for a child to be safely restrained in a belt-positioning booster seat, the car's shoulder belt should cross evenly across the torso and the car's lap belt should lay low and flat across the hips.  Additionally, the child should be able to sit properly in the seat for the duration of the ride.

37.    While Defendants did conduct side-impact tests of their Big Kid Booster, the only ways the seat could fail was if the crash-test dummy fell out of the seat and landed on the floor or if the seat broke in to pieces.

38.     When presented with the following photographs from Defendants' side-impact tests showing the dummy's reaction, Defendants' own senior test technician testified that all four tests would have passed.






39.     In the 13 years the senior test technician had worked for Defendants, he had never failed a booster's side-impact test.

40.     Defendants' booster seat engineer has admitted that if a real child reacted in a similar way in a real-life crash, they could suffer "catastrophic head, neck and spinal injuries- or die."

- 11 -

41.    Despite the tested safety differences between a harnessed forward-facing car seat and a booster seat, Defendants' General Counsel claimed that they "provide comparable overall safety."

42.    While both the AAP and the NHTSA recommend keeping children in harnessed forward-facing car seats until they are outgrown, Defendants' manual stated, "children who have not outgrown their toddler seat [a harnessed forward-facing car seat] can benefit from the use of a booster seat, if it is used properly." Defendants' General Counsel did not believe that their recommendations were contrary to either the AAP or NHTSA's.

43.    As early as February 2012, one of Defendants' own engineers told company executives that children under 40 pounds would be safer in a harnessed forward-facing car seat than a belt-positioning booster seat.  He recommended updating the Big Kid Booster's weight rating to 40 pounds, which would be consistent with the 2011 AAP and NHTSA recommendations.  Additionally, he shared a 2010 federal report on booster seat effectiveness that supported his position that children are safer in harnessed forward-facing car seats than belt-positioning booster seats.

44.    Because a harnessed forward-facing car seat secures at five points (shoulders, hips, and between the legs), it is able to disperse the force of a crash over a wider area of the child's body than a belt-positioning booster, which provides more protection to the child.  Compare the photographs below, showing a side-impact

crash involving a Big Kid Booster on the right and a harnessed forward-facing car seat on the left:



45.    According to ProPublica, when shown the videos of the crash tests involving the Big Kid Booster, the pediatrician and lead author of the AAP car seat recommendations stated that the movement experienced by the dummy could result in abdominal, brain, and spinal injuries, paralysis, or death in a real child.[5]

46.    Defendants have touted their commitment to safety and emphasized their dedication to ensuring the safety of children: "Safety isn't just a word to us, it's in our DNA…. We rigorously test all of our products, repeatedly."

47.    Defendants have marketed their "rigorous" side-impact test protocol, stating that all of their car seats are tested to energy levels two times the federal crash test standard and subjected to their side-impact test protocol that "simulates the energy in severe 5-star government side impact tests conducted for automobiles."

---

[5] *Id.*

Additionally, they claim that their products "meet[] or exceed[] all applicable federal safety standards and Evenflo's side impact standards."

48.    Federal side-impact tests conducted on automobiles involve a 3,300-pound barrier hitting the vehicle side at 31 miles per hour; a 3,015-pound barrier hitting a standing vehicle at 38.5 miles per hour; and pulling a vehicle sideways at 20 miles per hour into a pole.

49.    In comparison, Defendants' side-impact tests of the Big Kid Booster involves a bench moving at 20 miles per hour before sudden deceleration; neither a barrier nor a pole impact the bench.

50.    Defendants' statements and representations were misleading and deceptive to consumers because the Big Kid Booster did not meet the safety standards they claimed and it was marketed for use by children contrary to the recommendations by the AAP and NHTSA.

51.    The U.S. Congress House Committee on Oversight and Reform has acknowledged the safety concerns regarding the Big Kid Seat.  In a February 12, 2020, letter to Defendants, it stated that the safety representation (Side Impact Tested) was "inconsistent with the videos of Defendants' side-impact crash tests, further stating that Defendants' "internal tests appear to show that side impacts could put children sitting in the 'Big Kid' seat in grave danger."[6]

---

[6] Letter from the U.S. Congress House of Representatives Committee on Oversight and Reform to Jon Chamberlain, CEO of Evenflo, February 12, 2020,

52.    Reasonable consumers, like Plaintiff, considered and relied on the claims and representations to be material to their decision to purchase the Big Kid Booster.

53.    Consumers reasonably relied upon Defendants' misleading claims as objective statements that communicated, represented, and advertised that the Big Kid Booster possessed specific product characteristics.

54.    Moreover, Defendants claimed their products were subjected to rigorous side-impact testing and were safe for use by children contrary to the recommendations by the AAP and NHTSA.

55.    Defendants knew or should have known that the Big Kid Booster did not conform to their statements and representations.

56.    Defendants knew or should have known that consumers would consider such non-conformances to be material considerations when purchasing the Big Kid Booster.

57.    Plaintiff's reliance was reasonable because Defendants' marketing emphasized their commitment to safety, including their rigorous side-impact test protocol.

---

https://oversight.house.gov/sites/democrats.oversight.house.gov/files/2020-02-12.RK%20to%20Chamberlain-Evenflo%20re%20Big%20Kid%20Seat1.pdf (last accessed April 5, 2020).

58.     A reasonable consumer would not have purchased the Big Kid Booster had they known the product did not meet the safety standards as Defendants claimed, including that the product was marketed for use by children contrary to the recommendations by the AAP and NHTSA.

59.     As a result of these misleading and deceptive statements and representations, consumers, like Plaintiff, suffered financial losses by purchasing products that did not conform to their claims.

60.     The Big Kid Booster is one of Defendants' biggest sellers, with more than 18 million units sold.

61.     Defendants foresaw Plaintiff's reliance on their misleading statements and representations as they designed the marketing of the Big Kid Booster to target and induce reasonable consumers, like Plaintiff, to purchase the product based on the misleading and deceptive claims surrounding the product's safety.

62.     Defendants had exclusive knowledge of the true nature of their safety program and side-impact tests and corresponding results.

63.     Consumers, like Plaintiff, had no means to ascertain that the rigorousness of Defendants' safety program and side-impact tests were not as marketed or represented.

64.     Defendants acted intentionally to hide the truth about the safety of the Big Kid Booster and willingly misrepresented and failed to disclose to consumers the true nature of their safety program and side-impact tests and results.

65.     Defendants did so despite knowing that the misleading and deceptive statements and representations regarding the Big Kid Booster's safety were material to reasonable consumers, such as Plaintiff.  Defendants knew consumers trusted and relied on them to ensure that their Big Kid Booster met the safety standards they claimed.

**CLASS ACTION ALLEGATIONS**

66.     Plaintiff brings this action individually and on behalf of the following Class pursuant to Rule 23:

> All persons who reside in the State of California who purchased or owned any model of the Big Kid Booster from 2011 to the present, for personal or business use, and not for resale.

67.     Excluded from the proposed class are Defendants, any parent companies, subsidiaries, and/or affiliates, officers, directors, legal representatives, employees, co-conspirators, all governmental entities, and any judge, justice, or judicial officer presiding over this matter.

68.     This action is brought and may be properly maintained as a class action. There is a well-defined community of interests in this litigation and the members of the Class are easily ascertainable.

69.     The members in the proposed Class are so numerous that individual joinder of all members is impracticable, and the disposition of the claims of the Class members in a single action will provide substantial benefits to the parties and Court.

70.    Questions of law and fact common to Plaintiff and the Class include, but are not limited to, the following:

    a.    Whether Defendants wrongfully and falsely represented and continues to represent that the Big Kid Booster is safe in side-impact crashes;

    b.    Whether Defendants wrongfully and falsely represented that the Big Kid Booster meets or exceeds their own side-impact standards;

    c.    Whether Defendants wrongfully and falsely represented the safety of the Big Kid Booster when used by children as small as 30 pounds and 3 years old;

    d.    Whether Defendants violated various California laws;

    e.    Whether Defendants engaged in false advertising;

    f.    Whether Defendants made fraudulent misrepresentations;

    g.    Whether Defendants unjustly enriched themselves at consumers' expense;

    h.    Whether Defendants fraudulently concealed material facts from consumers;

    i.    Whether Plaintiff and the members of the Class are entitled to actual, statutory, and punitive damages; and

    j.    Whether Plaintiff and the members of the Class are entitled to declaratory and injunctive relief.

71.    Defendants engaged in a course of common conduct that gave rise to the legal rights sought to be enforced by Plaintiff individually and on behalf of the other members of the Class.  Identical statutory violations and business practices and harms are involved.  Individual questions, if any, are not prevalent in comparison to the numerous common questions that dominate this action.

72.    Plaintiff's claims are typical of those of the members of the Class because they are based on the same underlying facts, events, and circumstances relating to Defendants' conduct.

73.    Plaintiff will fairly and adequately represent and protect the interests of the Class, has no interests incompatible with the interests of the Class, and has retained counsel competent and experienced in class action, consumer protection, and false advertising litigation.

74.    Class treatment is superior to other options for resolution of the controversy because the relief sought for each member of the Class is small such that, absent representative litigation, it would be infeasible for members of the Class to redress the wrongs done to them.

75.    Questions of law and fact common to the Class predominate over any questions affecting only individual members of a Class.

76.    As a result of the foregoing, class treatment is appropriate.

# CLAIMS FOR RELIEF

## COUNT I
### Violations of California's Consumer Legal Remedies Act, California Civil Code §§1750, *Et Seq*., Against Defendants on Behalf of the Class

77.     Plaintiff incorporates by reference and realleges each and every allegation contained above, as though fully set forth herein.

78.     Plaintiff and each Class member is a "consumer," as that term is defined in California Civil Code §1761(d).

79.     The Big Kid Boosters are "goods," as that term is defined in California Civil Code §1761(a).

80.     Defendants are a "person," as that term is defined in California Civil Code §1761(c).

81.     Plaintiff and each proposed Class member's purchases of Defendants' products constituted a "transaction," as that term is defined in California Civil Code §1761(e).

82.     Defendants' conduct alleged herein violates the following provisions of California's Consumer Legal Remedies Act (the "CLRA"):

    a.  California Civil Code §1770(a)(5) by negligently, recklessly, and/or intentionally representing that the Big Kid Boosters have characteristics that they do not have;

b.  California Civil Code §1770(a)(7) by negligently, recklessly, and/or intentionally representing that the Big Kid Boosters were of a particular standard, quality, or grade, when they were of another;

c.  California Civil Code §1770(a)(9) by negligently, recklessly, and/or intentionally advertising the Big Kid Boosters with intent not to sell them as advertised; and

d.  California Civil Code §1770(a)(16) by representing that the Big Kid Boosters have been supplied in accordance with previous representations when they have not.

83.     As a direct and proximate result of these violations, Plaintiff and the Class have been harmed, and that harm will continue unless Defendants are enjoined from using the misleading labels, packaging, statements, and representations described herein in any manner in connection with the advertising and sale of the Big Kid Boosters.

84.     Plaintiff seeks an award of attorneys' fees pursuant to, inter alia, California Civil Code §1780(e) and California Code of Civil Procedure §1021.5.

**COUNT II**
**Violations of California False Advertising Law, California Business & Professions Code §§17500, *Et Seq*., Against Defendants on Behalf of the Class**

85.     Plaintiff incorporates by reference and realleges each and every allegation contained above, as though fully set forth herein.

86.    California's False Advertising Law prohibits any statement or connection with the sale of goods "which is untrue or misleading." Cal. Bus. & Prof. Code §17500.

87.    As set forth herein, Defendants' claims that the Big Kid Boosters are subjected to rigorous side-impact test protocol that includes simulation of the energy present in severe 5-star government side-impact tests of automobiles and that their products meet or exceed their own side impact standards and safe for children as small as 30 pounds and 3 years old (in direct conflict with the recommendations by NHTSA and AAP) are literally false, misleading, and likely to deceive the public.

88.    Defendants knew or reasonably should have known that all these claims were untrue or misleading.

89.    Defendants' conduct is ongoing and continuing, such that prospective injunctive relief is necessary, especially given Plaintiff's desire to purchase these or other similar products manufactured by Defendants in the future if they can be assured that, as long as the Big Kid Boosters are as advertised, subjected to rigorous side-impact test protocol that includes simulation of the energy present in severe 5-star government side-impact tests of automobiles, that their products meet or exceed their own side impact standards, and are safe for children consistent with NHTSA and AAP recommendations.

90.    Plaintiff and the Class members are entitled to injunctive and equitable relief and restitution in the amount they spent on the Big Kid Boosters.

**COUNT III**

**Violations of the Unfair Competition Law, California Business & Professions Code §§17200, *Et Seq*., Against Defendants on Behalf of the Class**

91.    Plaintiff incorporates by reference and realleges each and every allegation contained above, as though fully set forth herein.

92.    The Unfair Competition Law prohibits any "unlawful, unfair, or fraudulent business act of practice." Cal. Bus. & Prof. Code §17200.

**Fraudulent**

93.    Defendants' statements that the Big Kid Boosters are subjected to rigorous side-impact test protocol that includes simulation of the energy present in severe 5-star government side-impact tests of automobiles, that their products meet or exceed their own side impact standards and safe for children as small as 30 pounds and 3 years old (in direct conflict with the recommendations by NHTSA and AAP) are literally false, misleading, and likely to deceive the public.

**Unlawful**

94.    As alleged herein, Defendants have advertised the Big Kid Boosters with false or misleading claims, such that Defendants' actions as alleged herein violate at least the following laws:

a.    The CLRA, California Business & Professions Code §§1750, *et seq*., and

b.    The False Advertising Law, California Business & Professions Code §§17500, *et seq*. (the "FAL").

- 23 -

**Unfair**

95.     Defendants' conduct with respect to the labeling, packaging, advertising, marketing, and sale of the Big Kid Boosters is unfair because Defendants' conduct was immoral, unethical, unscrupulous, or substantially injurious to consumers and the utility of its conduct, if any, does not outweigh the gravity of the harm to its victims.

96.     Defendants' conduct with respect to the labeling, packaging, advertising, marketing, and sale of the Big Kid Boosters is also unfair because it violates public policy as declared by specific constitutional, statutory, or regulatory provisions, including, but not limited to the FAL and the CLRA.

97.     Defendants' conduct with respect to the labeling, packaging, advertising, marketing, and sale of the Big Kid Boosters is also unfair because the consumer injury is substantial, not outweighed by benefits to consumers or competition, and not one that consumers, themselves, can reasonably avoid.

98.     In accordance with California Business & Professions Code §17203, Plaintiff seeks an order enjoining Defendants from continuing to conduct business through fraudulent or unlawful acts and practices and to commence a corrective advertising campaign.  Defendants' conduct is ongoing and continuing, such that prospective injunctive relief is necessary.

99.    On behalf of herself and the Class, Plaintiff also seeks an order for the restitution of all monies from the sale of the Big Kid Boosters, which were unjustly acquired through acts of fraudulent, unfair, or unlawful competition.

**COUNT IV**

**Unjust Enrichment Against Defendants on Behalf of the Class**

100.    Plaintiff incorporates by reference and realleges each and every allegation contained above, as though fully set forth herein.

101.    Substantial benefits have been conferred on Defendants by Plaintiff and the Class members through the purchase of the Big Kid Boosters.   Defendants knowingly and willingly accepted and enjoyed these benefits.

102.    Defendants either knew or should have known that the payments rendered by Plaintiff were given and received with the expectation that the Big Kid Booster would have the qualities and characteristics represented by Defendants.  As such, it would be inequitable for Defendants to retain the benefit of the payments under these circumstances.

103.    Defendants' acceptance and retention of these benefits under the circumstances alleged herein make it inequitable for Defendants to retain the benefits without payment of the value to Plaintiff and the Class members.

104.    Plaintiff and the Class members are entitled to recover from Defendants all amounts wrongfully collected and improperly retained by Defendants, plus interest thereon.

105.    Plaintiff and the Class members seek actual damages, injunctive and declaratory relief, attorneys' fees, costs, and any other just and proper relief available under the laws.

**COUNT V**
**Fraudulent Misrepresentation**
**Against Defendants on Behalf of the Class**

106.    Plaintiff incorporates by reference and realleges each and every allegation contained above, as though fully set forth herein.

107.    Defendants falsely represented to Plaintiff and the Class members that their Big Kid Boosters:

> a.    Were subjected to a rigorous side-impact test protocol, including side-impact tests where the energy in severe 5-star government side-impact tests conducted for automobiles was simulated;
>
> b.    Met or exceeded their side-impact standards; and
>
> c.    Were safe for children as small as 30 pounds and 3 years old.

108.    Defendants intentionally and knowingly made these misrepresentations to induce Plaintiff and the Class members to purchase the Big Kid Boosters.

109.    Defendants knew that their representations about the Big Kid Boosters were false in that the Big Kid Boosters were not subjected to side-impact tests as claimed and were not safe for children as young as 3 years old and as small as 30 pounds.    Defendants allowed their labeling, packaging, marketing materials, and

statements to intentionally mislead consumers, such as Plaintiff and the Class members.

110.    Plaintiff and the Class members did in fact rely on these misrepresentations and purchased the Big Kid Boosters to their detriment.  Given the deceptive manner in which Defendants represented and otherwise promoted the Big Kid Boosters, Plaintiff and the Class members' reliance on Defendants' misrepresentations was justifiable.

111.    As a direct and proximate cause of Defendants' conduct, Plaintiff and the Class members have suffered actual damages in that they purchased the Big Kid Boosters that are worth less than the price they paid and that they would not have purchased at all had they known the truth about the Big Kid Boosters' side-impact test protocol or safety for children as small as 30 pounds and 3 years old.

112.    Plaintiff and the Class members seek actual damages, injunctive and declaratory relief, attorneys' fees, costs, and any other just and proper relief available under the laws.

**COUNT VI**
**Fraudulent Concealment**
**Against Defendants on Behalf of the Class**

113.    Plaintiff incorporates by reference and realleges each and every allegation contained above, as though fully set forth herein.

- 27 -

114.   Defendants fraudulently concealed material facts that they had a legal duty to disclose to Plaintiff and the Class members regarding the Big Kid Boosters. These material facts known by Defendants were:

> a.  The results of the side-impact tests to which the Big Kid Boosters were subjected;
>
> b.  The true nature of the side-impact testing program; and
>
> c.  The dangers associated with using the Big Kid Boosters contrary to the recommendations by the AAP and NHTSA.

115.   Defendants intentionally and knowingly omitted this information to induce Plaintiff and the Class members to purchase the Big Kid Boosters.

116.   Defendants knew that the concealment or nondisclosure of these facts regarding the true nature of the Big Kid Boosters' safety were material to consumers because they contradicted the representations made by Defendants in their labeling, packaging, marketing materials, and statements.

117.   Defendants had a legal duty to disclose this information because Defendants knew the representations made in their labeling, packaging, marketing materials, and statements created a false impression unless these omitted material facts were disclosed to Plaintiff and the Class members.

118.   Plaintiff and the Class members had no knowledge of the true nature of the Big Kid Boosters' safety based on Defendants' fraudulent concealment and nondisclosures and they had no ability to discover the omitted information prior to

purchasing the Big Kid Boosters.  Given the deceptive manner in which Defendants chose to omit or not disclose material information concerning the true quality of the Big Kid Boosters, Plaintiff and the Class members were injured.

119.   As a direct and proximate result of Defendants' conduct, Plaintiff and the Class members suffered actual damages in that they purchased the Big Kid Boosters that were worth less than the price they paid.

120.   Plaintiff and the Class members would not have purchased the Big Kid Boosters at all had they known of the omitted and nondisclosed information.

121.   Plaintiff and the Class members seek actual damages, injunctive and declaratory relief, attorneys' fees, costs, and any other just and proper relief available under the law.

## JURY DEMAND

Plaintiff demands a trial by jury on all issues so triable.

## PRAYER FOR RELIEF

Wherefore, Plaintiff, individually and on behalf of all others similarly situated, respectively requests relief against Defendants as set forth below:

A.    Certifying the proposed Class; appointing Plaintiff as Class representative; and her undersigned counsel as Class counsel;

B.    An order requiring Defendants to bear the costs of class notice;

C.    An order enjoining Defendants from selling the Big Kid Boosters in any manner suggesting or implying that they have been subjected to side-impact

crash tests similar to those conducted for automobiles or that they are safe for use by children as small as 30 pounds and 3 years old;

D.    An order requiring Defendants to engage in a corrective advertising campaign and engage in any further necessary affirmative injunctive relief, such as recalling existing products;

E.    An order awarding declaratory relief, and any further retrospective or prospective injunctive relief permitted by law or equity, including enjoining Defendants from continuing unlawful practices alleged herein, and injunctive relief to remedy Defendants' past conduct;

F.    An order requiring Defendants to pay restitution to restore all funds acquired by means of any act or practice declared by this Court to be an unlawful, unfair, or fraudulent business act or practice, untrue or misleading advertising, or a violation of California law, plus pre- and post- judgment interest thereon;

G.    An order requiring Defendants to disgorge or return all monies, revenues, and profits obtained by means of any wrongful or unlawful act or practice;

H.    An order requiring Defendants to pay all actual and statutory damages permitted under the counts alleged herein;

I.    An order requiring Defendants to pay punitive damages on any count so allowable;

J.    An order awarding attorneys' fees and costs, including the costs of pre-suit investigation, to Plaintiff and the Class members; and

1      K.      An order providing for all other such equitable relief as may be just and

2   proper.

3

4                                **JURY DEMAND**

5          Plaintiffs hereby demand a trial by jury on all issues so triable.

6

7

8   Dated: April 14, 2020              LOCKRIDGE GRINDAL NAUEN P.L.L.P.
                                       ROBERT K. SHELQUIST
9                                      REBECCA A. PETERSON (241858)
                                       KRISTA K. FREIER
10

11                                     s/ Rebecca A. Peterson
                                       REBECCA A. PETERSON
12                                     100 Washington Avenue South, Suite 2200
13                                     Minneapolis, MN 55401
                                       Telephone: (612) 339-6900
14                                     Facsimile:  (612) 339-0981
15                                     E-mail: rkshelquist@locklaw.com
                                               rapeterson@locklaw.com
16                                             kkfreier@locklaw.com

17                                     LAW OFFICE OF JON BORDERUD
18                                     Jon W. Borderud
19                                     7 West Figueroa Street, 3rd Floor
                                       Santa Barbara, CA 93101
20                                     Telephone (310) 621-7004
21                                     E-mail:  borderudlaw@cox.net

22                                     SHINDLER ANDERSON GOPELRUD & WEESE PC
23                                     J. BARTON GOPLERUD
                                       5015 Grand Ridge Drive
24                                     West Des Moines, IA 50265
25                                     Telephone: (515) 223-4567
                                       E-mail: goplerud@sagwlaw.com
26

27                                     **Attorneys for Plaintiff**

28

                                       - 31 -